The Honorable Ronald B. Leighton

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO. CR05-5238RBL |
| Plaintiff, | |
| v. | UNITED STATES' SENTENCING MEMORANDUM |
| WILLIAM JOHN DIEHL, | |
| Defendant. | |

## I. INTRODUCTION.

Defendant William John Diehl traveled by car from Aberdeen Washington, to the other side of the country for the express purpose of sexually exploiting a troubled young girl. He brought his victim back to Washington, having sex with her in multiple states along the way. The trip involved considerable advance planning, and occurred over an extensive period of time. During the return trip, the defendant made his victim available for sex acts to people he corresponded with over the internet who shared his disturbing interest in sado-masochism, "slavery" and sex with minors. He took pictures and videos of his sex acts with his victim, and distributed them over the internet and across state lines to at least one other person.

Defendant committed these acts knowing that his victim was a minor and knowing his actions were illegal. Notwithstanding his guilty plea, there is no evidence that Defendant feels the least bit of remorse for his actions. Instead, his only regret appears to be that he does not get to see his victim again.

UNITED STATES' SENTENCING MEMO – 1
(DIEHL, CR05-5238RBL)

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101-1271
(206) 553-7970) 553-7970

1   In short, the undisputed evidence before this Court shows that Defendant is a
2   predator who poses a danger to society in general, and to his victim in particular. Only a
3   long sentence can fully punish Defendant for his crimes, and protect society from future
4   crimes. Accordingly, the government respectfully joins the Probation Office in
5   recommending a sentence of 120 months of incarceration, to be followed by 10 years of
6   supervised release. While this is a departure over the applicable Guidelines range, it
7   accurately reflects the true nature of Defendant's conduct.

8                                **II.   FACTUAL BACKGROUND**

9   The factual background is accurately summarized in the Presentence Report (PSR).
10  The government writes to flesh out details about Defendant's proclivities and other issues
11  uncovered during a search of his house and computer.

12  **A.   DEFENDANT'S PROPENSITY TO VICTIMIZE MINORS.**

13  Defendant is allegedly himself a victim of sexual abuse. PSR ¶ 50. According to
14  family members, he in turn has allegedly abused others in the past, including his sister
15  and two other young girls. PSR ¶ 54, 61.
16  Material recovered from Defendant's computer shows a deviant interest in sex
17  with minors and sexual "slavery." Defendant began and sponsored several discussion
18  groups on Yahoo!, including the "Academy of Masters and Slaves," and "The Mother and
19  Daughter Slave Group." Through these groups, Defendant met other people online who
20  shared his interests, including other "masters" (people who evidently prefer to dominate
21  others sexually) and "slaves" (people who prefer to be dominated).
22  Among others, Diehl engaged in extensive chats with a "MasterCealn200," (later
23  identified as Robert Celan Gilbert of Newport Michigan), and James Wallace a/k/a
24  "Herbalest" of Greensburg, Kentucky. Defendant saved many of these chat logs on his
25  hard drive, and copies were produced to the defense. During these chats, Defendant and
26  his associates discussed various "slaves" they had allegedly contacted over the internet,
27  and plans to meet them in person and exploit them. Defendant specifically told both men
28  about his activities with ALR.

UNITED STATES' SENTENCING MEMO – 2
(DIEHL, CR05-5238RBL)

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101-1271
(206) 553-7970) 553-7970

Defendant also engaged in chats with several prospective "slaves." The government has been unable to definitively determine the true identity of these individuals. However, it appears that Defendant made rather extensive efforts to learn the true identity of one of the slaves who went by the screen name of "Courtney," and held herself out as a minor who had been subject to sexual abuse.

Most troubling, agents recovered a two-page typewritten document apparently written by Defendant and entitled "Rudiments of a plan." A copy of this document is submitted under seal as Exhibit 1. The "objective" of the plan was "to abduct two girls 7-9 and transport them to trade for slaves courtney and trina [sic]." It goes on to describe in detail how the crime would be committed. The girls would be imprisoned in sound dampening boxes by a "Master Bob." The girls would be taken from different neighborhoods, and the plan discusses how they would be selected and kidnaped in extensive detail. A "small blade" would be used "to hurt girls to make them believe that they could be killed at any time if they do not mind." Defendant discusses wearing a "Shoes size 11 fit over my shoes to make my footprints not match my feet" and using bleach to eliminate genetic evidence. The objective was to create "good and obedient slaves" through psychological abuse and sensory deprivation. There is no evidence that Defendant actually carried through any part of this plan, but its existence is disturbing, to say the least.

**B.    DEFENDANT'S VICTIMIZATION OF ALR**.

Defendant did not have to kidnap anyone, because he found a more willing victim. One of the people Defendant contacted over the internet was ALR, who was 15 years old at the time. ALR specifically told Defendant her correct age, and among various documents recovered from Defendant's home was a calendar showing ALR's correct birthday. Defendant also had specific knowledge that engaging in sex with ALR was illegal - indeed, his sister-in-law, L.D., warned him not to proceed with the trip to pick up ALR due to the victim's age. PSR ¶ 20.

UNITED STATES' SENTENCING MEMO – 3
(DIEHL, CR05-5238RBL)

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101-1271
(206) 553-7970) 553-7970

During their original chats, ALR made it clear that she was a very troubled young girl. Defendant and ALR developed a "relationship" online. ALR (who is African-American) called Defendant (who is white) "master" and he christened her "Dorei" which is allegedly a Japanese word for slave. Their chats culminated in her agreeing to run away with him.

To that end, Defendant drove from his home in Aberdeen, Washington, to the Washington D.C. area to pick up ALR. As set forth in the PSR, she met up with Defendant in Maryland. He took her to a nearby car dealership, where his vehicle was undergoing repairs. According to his own written statement, Defendant wanted to "see what he was getting" so the two went into the bathroom at the dealership and had sex.

After the car was repaired, the two took a circuitous route back to Aberdeen that included stops for sex in multiple states, including West Virginia, Kentucky (where they visited Defendant's friend "Herbalist" and Defendant offered ALR for sex to his friend; PSR ¶ 23), Alabama, Florida, Ohio (where they communicated with "MasterCelan," as detailed below), and Wyoming, ending up in Aberdeen.

At some point prior to their stop in Ohio, the Defendant took digital still and movie images of ALR naked and performing oral and other sex acts with Defendant. These images were recovered from both Defendant's camera and his laptop computer. Defendant engaged in further chats with Gilbert, during which he offered to make ALR available to Gilbert for sex.

Diehl specifically stopped in Toledo, Ohio, because it was close to Gilbert's home in Newport Michigan. During that stop, Diehl engaged in a chat with Gilbert that was logged and saved on his hard drive on or about February 11, 2005. A copy of that chat, recovered during a forensic exam of Defendant's computer, is filed herewith under seal as Exhibit 2. The entire chat perhaps gives the Court a flavor of the two men's interaction. However, the most pertinent part, which is referred to in the PSR at paragraph 21, is found at pages 3-5. Based on the context, it appears that at some point ALR took over the keyboard and chatted directly with Gilbert, while Defendant watched. It also appears

UNITED STATES' SENTENCING MEMO – 4
(DIEHL, CR05-5238RBL)

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101-1271
(206) 553-7970) 553-7970

from the context that ALR transmitted the sexually explicit photos Defendant took of ALR to Gilbert, at Defendant's instruction.[1]  However, no definitive forensic evidence of that transmission was recovered from Diehl's computer.

Defendant and ALR finally arrived back in the Aberdeen, Washington, area on or about February 16, 2005.  Defendant has admitted that he had sex with his victim again at his apartment after they arrived.  He introduced ALR to his brother P.D. as his "fiancé" using her slave name Dorei.  P.D. called 911 with a tip, and local law enforcement responded to Defendant's apartment.  On their arrival, they found ALR there naked in bed.  Both Defendant and ALR ultimately provided law enforcement with written statements substantiating the details of the trip.

Defendant was arrested, and ultimately charged federally with one count of transporting a minor with the intent to engage in illicit sexual activity, in violation of 18 U.S.C. § 2423.  Defendant's digital camera and computers were seized, together with a number of "sex toys" including handcuffs, riding crops, and other bondage/S&M materials.

C.     THE SUBSEQUENT INVESTIGATION.

A forensic analysis of Defendant's computer turned up the chat logs referenced above.  Investigators were ultimately able to trace the "MasterCelan200" screen name to a particular Internet Service Provider, which in turn led them to Robert Celan Gilbert in Newport, Michigan.  A referral was sent out to the FBI office in Michigan with a request to look into searching that computer.

FBI agents were ultimately able to secure a search warrant for Gilbert's computer, and discovered over a thousand images of child pornography.  The initial review of the computer, however, did NOT find any pictures of ALR.  On that basis, the government extended a plea offer to Defendant consistent with the plea agreement before the Court for sentencing.

---

[1] Creation and distribution of child pornography is a separate offense pursuant to 18 U.S.C. § 2251, which carries a fifteen (15) year mandatory minimum sentence.

UNITED STATES' SENTENCING MEMO – 5
(DIEHL, CR05-5238RBL)

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101-1271
(206) 553-7970) 553-7970

AFTER that plea offer was extended and accepted by Defendant, the FBI discovered three pictures of ALR engaged in sex with Defendant - the same pictures found on Defendant's computer and digital camera, and evidently transmitted by Defendant from his hotel in Ohio to Gilbert in Michigan. This was conclusive proof that Defendant had violated 18 U.S.C. § 2251.

After the guilty plea, Defendant proffered rather vague information to the government about another person he chatted with over the internet who allegedly shared similar interests. However, Defendant's information was not actionable in any way; it has not led to the identification of any new suspects, much less their prosecution. What was most notable about his proffer was his obvious lack of remorse for his actions as to ALR.

### III. GUIDELINES CALCULATION

The government concurs with the Probation Office's Guidelines calculation in its entirety. Based on the offense of conviction, the defendant is base offense level 24, pursuant to USSG § 2G1.3. He used a computer to facilitate the crime, and engaged in sex with his victim, which results in a four-level increase. The government agrees that Defendant has NOT accepted responsibility for the offense, at least not as of this date. This results in a total offense level of 28. The Defendant is criminal history category I which results in an advisory Guidelines sentence range of 78-97 months. There is a five-year mandatory minimum sentence for the offense of conviction.

As set forth above, the evidence shows that Defendant also committed a violation of 18 U.S.C. § 2251, which carries a *fifteen*-year mandatory minimum sentence. If he had been charged with that offense, the Probation Office calculates an advisory Guidelines range of between 210-262 months.

The Government submits this calculation is at the low end. The applicable Guideline, USSG 2G2.1, calls for a base offense level of 32; an increase of two levels where the victim was under 16 years of age; an increase of an additional two levels where there was actual sexual contact; an increase of two more levels where there was distribution of the images; and an increase of another two levels where a computer was

(DIEHL, CR05-5238RBL)

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101-1271
(206) 553-7970) 553-7970

used. This results in a total offense level of 40. Defendant has as of this date not accepted responsibility for his offense, and appears to be unrepentant. This results in a Guidelines range of 292-365. IF the defendant was given credit for acceptance, the range would drop to the 210-262 months calculated by Probation.

The Court can, and should, consider these facts pursuant to USSG 5K2.21, which explicitly allows the Court to depart upward to reflect the **actual** seriousness of the offense, including conduct that was never charged. Here, Defendant only avoided being charged for manufacturing and transporting child pornography because of the length of time it took to track down and locate Gilbert and forensically examine his computer.

## IV. RECOMMENDATION AND JUSTIFICATION

Defendant is a predator who was in active contact with other predators. He actively sought out girls to act as his sexual "slaves" over the Internet, and went so far as to develop a plan to kidnap 7 to 9-year-old girls so he could mold them into perfectly submissive slaves. He successfully enticed a troubled 15-year-old girl to leave her family, and brought her across country to the United States, engaging in repeated acts of statutory rape along the way. He created child pornography by photographing those acts, and distributed them over the Internet to one of his fellow "masters."

Based on these facts, only a long sentence can adequately punish Defendant and protect his victim and the public from likely future crimes. Accordingly, the government concurs with Probation's recommendation of a 120-month sentence, to be followed by ten years of supervised release. This is a reasonable sentence given these facts, and is called for by the factors set forth at 18 U.S.C. § 3553(a). Those factors include: (1) the nature and circumstances of the offenses; (2) the history and characteristics of the defendant; (3) the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (4) the need for the sentence to afford adequate deterrence to criminal conduct; (5) the need for the sentence to protect the public from further crimes of the defendant; (6) the need to provide the defendant with educational and vocational training, medical care, or other

UNITED STATES' SENTENCING MEMO – 7
(DIEHL, CR05-5238RBL)

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101-1271
(206) 553-7970) 553-7970

correctional treatment in the most effective manner; (7) the kinds of sentences available; (8) the need to provide restitution to victims; and (9) the need to avoid unwarranted sentence disparity among defendants involved in similar conduct who have similar records.

The relevant factors and factual background call out for the at least a 120-month sentence, which is a departure from the otherwise applicable Guideline range. A sentence of 120 months:

- Takes into account the nature and circumstances of this offense, which featured extensive planning, repeated acts of statutory rape, and the production and distribution of child pornography depicting those acts.
- Reflects Defendant's characteristics - specifically, his obsession with "enslaving" young girls.
- Satisfies the need for the sentence to reflect the serious nature of the charged offense, and to provide just punishment. Defendant victimized a very troubled young girl. The victim and her family continue to suffer today and will do so well into the future. Only the longest sentence can fully punish Defendant for this crime.[2]

Perhaps most important, a long sentence is necessary to "protect the public from further crimes of the defendant" within the meaning of 18 U.S.C. § 3553(a)(2)(C). Based on information provided by Defendant's family, he has engaged in child-related sex offenses in the past. Based on the chats and other material recovered from his computer, he is obsessed with committing similar offenses, and worse. Indeed, his whole "virtual" social circle involves discussing, fantasizing about and planning similar and worse crimes. Finally, he appears to bear no real remorse for his crime.

---

[2] Congress, the Guidelines Commission, and society as a whole have increasingly come to recognize that sex offenses involving children are particularly heinous, and need to be dealt with in a severe manner. See, e.g., 18 U.S.C. § 3553(b)(2), which strictly limits the Court's ability to depart downward in cases involving sex crimes involving children. While this section is of dubious validity after United States v. Booker, 125 S. Ct. 738 (2005), it is still of some guidance in determining the appropriate sentence.

UNITED STATES' SENTENCING MEMO – 8
(DIEHL, CR05-5238RBL)

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101-1271
(206) 553-7970) 553-7970

## V.  CONCLUSION

For the reasons set forth above, the United States respectfully recommends a sentence of 120 months of incarceration, to be followed by ten years of supervised release, with the conditions outlined in the Presentence Report and recommendation.

DATED this 18th day of May, 2006.

        Respectfully submitted,

        JOHN McKAY
        United States Attorney

        s/ *Vincent T. Lombardi*
        VINCENT T. LOMBARDI
        WSB # 21967
        Assistant United States Attorney
        U.S. Attorneys' Office
        700 Stewart Street, Suite 5220
        Seattle, WA  98101
        Phone:  (206) 553-5178
        Fax:     (206) 553-0755
        Email: Vince.Lombardi@usdoj.gov

UNITED STATES' SENTENCING MEMO – 9
(DIEHL, CR05-5238RBL)

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101-1271
(206) 553-7970) 553-7970

**CERTIFICATE OF SERVICE**

I hereby certify that on May 18, 2006, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the attorney of record for the defendant.

s/ *Bonnie R. Wolfgram*
BONNIE R. WOLFGRAM
Legal Assistant
United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
Phone: (206) 553-2520
FAX:   (206) 553-0755
E-mail: bonnie.wolfgram@usdoj.gov